

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARSHALL LEWIS TUTOR on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> LINCOLN NATIONAL CORP. and LINCOLN NATIONAL LIFE INSURANCE COMPANY, collectively d/b/a LINCOLN FINANCIAL GROUP, <br><br> Defendants. | Case No.          ? ?      4 1 5 0 <br><br> **COMPLAINT – CLASS ACTION** <br><br> **JURY TRIAL DEMAND** |

Plaintiff, Marshall Lewis Tutor, on behalf of himself and all others similarly situated, files this class action complaint against Defendants Lincoln National Corporation and Lincoln National Life Insurance Company, collectively doing business as Lincoln Financial Group, and alleges as follows:

## NATURE OF THE ACTION

1.      Beginning August 2017, Lincoln dramatically increased the amount Plaintiff is charged every month to keep his life insurance policy in force.  The increase was the product of Lincoln's decision to increase the "cost of insurance" for Plaintiff's coverage by approximately forty percent in one month.   Lincoln implemented the increase in violation of the terms of Plaintiff's policy, in an effort to coerce him and other similarly situated policyholders into allowing their policies to lapse, thereby relieving Lincoln of its obligation to administer the policies in accordance with their terms.  Plaintiff brings this class action to enjoin Lincoln from

implementing the August 2017 increase and to recover amounts that Lincoln has wrongfully charged and collected from him and other owners of affected policies (the "class policies").

2.     From 1983 to 2008, Jefferson-Pilot Corporation, Lincoln's predecessor in interest, sold flexible premium adjustable life insurance policies. These policies, known as universal life policies, include both a "death benefit" and an investment component in the form of an "account" that earns interest. The policies are "flexible" in that they allow policyholders to vary the amount of premiums they wish to pay. A policyholder may choose, for example, not to pay a premium, or to pay a smaller premium and use the savings component of their policy—the policy value—to pay the remaining monthly costs associated with their policy. Generally, if a policyholder fails to pay a premium when due, and the policy value is insufficient to cover the monthly deduction, the policy will enter a grace period and the policyholder will receive notification of the minimum amount due. If that amount is not paid within the grace period, the policy is said to "lapse," and the insurer has no further obligation to the policyholder.

3.     The class policies authorize Lincoln to charge policyholders a monthly deduction for the cost of insurance ("COI"). The COI charge under the class policies is a monthly charge assessed for mortality, administration and other expenses associated with the administration of the class policies. Lincoln's discretion to determine the COI rate is constrained by the terms of the policies, which provide that it must calculate the COI "based on" its "expectations of future mortality, interest, expenses, and lapses."[1] The policies require Lincoln to implement "any change in the monthly cost of insurance rates . . . on a uniform basis for Insureds of the same rate class." Under the class policies, Lincoln is required to determine the COI on a monthly basis and

---

[1] A copy of Plaintiff's policy form is attached to this Complaint as Exhibit A.

2

is prohibited from deviating from the COI factors (future mortality, interest, expenses, and lapses).

4.    Lincoln breached its policy contracts with Plaintiff and other policyholders by using unauthorized factors to determine the COI rate.  Beginning in August 2017, in response to the adverse impact of years of low interest rates on Lincoln's investment portfolio, Lincoln abruptly raised the COI rates on select Lincoln Jefferson-Pilot policies issued between the years 1983 and 2008.  Under the express policy terms, however, Lincoln's investment performance is not a proper consideration in setting the COI.

5.    The COI increases applied to the class policies are dramatic.  Mr. Tutor's COI, for example, increased approximately 40%.  Updated illustrations factoring in the increased COI show substantially increased premiums will be required to keep the policy in force.  The practical effect of Lincoln's conduct has been higher monthly deductions for Plaintiff and other policy owners that, in many cases, will force a lapse of the policies and a loss of life insurance coverage.

6.    Lincoln breached the policies and violated its duty of good faith and fair dealing by: (1) not changing monthly COI rates on a uniform basis for insureds of the same rate class; (2) failing to base COI rates on Lincoln's current expectation of future mortality, interest, expenses and lapses; (3) delaying increases in COI for competitive reasons; (4) failing to determine COI rates on a monthly basis; and (5) drastically raising rates to make up for past financial losses. Lincoln has now implemented COI increases that are not justified by permissible factors, knowing that policyholders will be unable to pay the increased premiums, to force policyholders to relinquish their policies.  Plaintiff seeks damages to compensate for wrongfully increased COI charges and injunctive relief prohibiting Lincoln from continuing to maintain and assess the

3

wrongfully increased COI amounts, and reinstating any policies that lapsed as a result of the August 2017 increases.

## PARTIES

### A.   Plaintiff

7.      Plaintiff Tutor is an individual and resident of Fuquay-Varina, North Carolina. He is the owner of a Lifesight 32 flexible premium adjustable policy, purchased from Jefferson-Pilot Life Insurance Company, Lincoln's predecessor in interest.

### B.   Defendants

8.      Defendant Lincoln National Corporation is an Indiana corporation with its principal place of business in Pennsylvania.  On April 3, 2006, Jefferson-Pilot merged into one of Lincoln National's wholly owned subsidiaries.  Lincoln National Corporation assumed Jefferson-Pilot's contractual obligations, including the class policies, in the merger.

9.      Defendant Lincoln National Life Insurance Company—an Indiana Corporation— is a wholly owned subsidiary of Lincoln National Corporation, with its principal place of business in Indiana.  Lincoln National Corporation and its affiliates, including Lincoln National Life Insurance Company, conduct business under the fictitious name Lincoln Financial Group.

10.     Lincoln National Corporation and Lincoln National Life Insurance Company are collectively referred to as Lincoln.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over the claims against Defendants in this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because Plaintiff brings class claims on behalf of citizens of states different from Defendants' state of citizenship,

4

the total amount in controversy exceeds \$5 million, and the proposed class contains more than 100 members.

12.     This Court has personal jurisdiction over Defendant Lincoln National Corporation because it maintains its principal place of business in Pennsylvania and much of the relevant conduct occurred here.

13.     This Court has personal jurisdiction over Defendant Lincoln National Life Insurance Company because it conducts significant business in Pennsylvania and much of the relevant conduct occurred here.

14.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendant Lincoln National Corporation maintains its principal executive offices in this District and a substantial part of the events and omissions giving rise to these claims occurred here.

## FACTUAL BACKGROUND

### A.     The Life Insurance Industry

15.     This action involves Lincoln's administration of life insurance policies owned by Plaintiff and other class members.

16.     The life insurance industry is competitive.  Life insurers like Lincoln compete with other insurers based on a number of factors, including investment performance and price. The rates a company charges to its policyholders therefore have a competitive impact as to its position within the larger industry.

17.     Life insurance companies typically use an agency structure to sell their products. Some life insurance companies use agents or sales representatives who are "captive," meaning they cannot sell competitors' products.  Instead, they sell only the products of the company for which they serve as an agent or sales representative.

5

18.     In selling insurance policies, agents use sales illustrations to show prospective policyholders the policy features and benefits, model premium payments, and to project how the policy value is expected to change over time.

19.     Lincoln does not have captive sales representatives or agents, meaning Lincoln agents can sell Lincoln products, or similar products offered by competing insurers. The fact that Lincoln agents are not limited to selling only Lincoln products creates intense pressure for Lincoln to maintain attractive sales illustrations so that Lincoln sales representatives are motivated to sell Lincoln policies rather than those offered by competing insurers.

20.     Life insurance companies use a classification system to determine how to price life insurance. Under the classification system, persons with similar health and lifestyle factors are pooled into rate classes. For instance, smokers are pooled into a classification under which their life insurance is more expensive than life insurance for non-smokers of the same general age, health and gender.

21.     Life insurance companies consider a range of health and lifestyle factors to determine what rate class a person falls into. Common factors include age, height, weight, cholesterol level, family history, and a person's lifestyle, *i.e.,* whether they engage in dangerous activities like skydiving or riding motorcycles.

22.     Insureds with approximately equal expected loss potential are classified equally and charged the same rates. Insureds in higher risk groups are charged more for their insurance.

23.     After determining an applicant's rate class, the life insurance company then provides a corresponding quote for a policy. If the applicant accepts the quote, the life insurance company issues a policy that specifies the insured's rate class.

**B.      Universal Life Insurance Policies**

6

24.     Lincoln and its predecessor, Jefferson-Pilot, have sold three types of life insurance products to their customers: term life insurance, whole life insurance, and universal life insurance.

25.     Term life insurance provides coverage at a fixed rate of payments for a limited period of time.  When the period expires, the policyholder is no longer entitled to coverage under the policy.

26.     Whole life insurance remains in force for the policyholder's entire life, provided that the required premiums are paid.  Whole life insurance includes an investment component—premiums are contributed to a savings account which the policyholder can borrow against or withdraw from.

27.     Universal life insurance policies are flexible-premium, adjustable death benefit life insurance policies.  Universal life insurance policies claim to offer the low-cost protection of term insurance as well as a savings component that earns a rate of return based on company-declared interest rates. Policyholders are only required to pay premiums in order to keep their policy value at a level sufficient to cover the monthly deduction.

28.     Life insurance companies invest the money that makes up the policyholders' policy value in anticipation of achieving a greater rate of return than the guaranteed interest rate promised to policyholders.  Policyholders are not entitled to any returns based on the performance of the life insurance companies' investments.  Likewise, the company, not the policyholder, bears the risk of those investments.

29.     Life insurance companies often take a monthly deduction from the policyholders' policy value.

7

30.     The COI charge is typically the largest and most important component of the monthly deduction. Even seemingly small changes to the COI can have a dramatic impact on the premium charged to the policyholder. The COI rates are based primarily on factors impacting an insured's mortality such as age, height, weight, tobacco use, blood pressure, cholesterol level, and other factors which affect the risk that the insured will pass away and the company will have to pay a death benefit.

**C.      The Lincoln Jefferson-Pilot Merger**

31.     On April 3, 2006, Lincoln announced completion of a merger with Jefferson-Pilot. Under the terms of the merger, Jefferson-Pilot merged into one of Lincoln's wholly owned subsidiaries, and Lincoln Financial Group "assum[ed] all the rights, privileges, immunities, properties, powers and franchises of Jefferson-Pilot." Lincoln likewise assumed Jefferson-Pilot's contractual obligations, including responsibility for the class policies.

**D.      The Jefferson-Pilot Universal Life Policies**

32.     Plaintiff and the proposed class purchased their policies from Jefferson-Pilot, Lincoln's predecessor in interest. The class policies include LifeSight series policies such as Lifesight 30, Lifesight 31, and Lifesight 32, in addition to UL101/UL102/UL103, UL 130/UL131, Vision 20, and Legend 3000 policies. Jefferson-Pilot issued the class policies between 1983 and 2008.

33.     Lincoln has administered Plaintiff's policy and all other class policies following the Jefferson-Pilot acquisition.

34.     The class policies are valid and enforceable contracts between the policyholders and Lincoln. The entire contract between the policyholder and Lincoln consists of the policy

8

itself, the attached application, and any attached endorsement or rider provisions (add-on additional benefit provisions).

35.     The terms of the class policies are not subject to individual negotiation and are materially the same.  They cannot be altered by an agent's representations at the time of sale, or by any other discussions or writings.  Only an "authorized officer" can change the terms of the policy, and any such change must be in writing.

36.     Unlike a standard term life insurance policy, Plaintiff's policy, like those of class members, is comprised of two components: (1) the "Specified Amount" of the life insurance benefit defined by the policy; and (2) the policy value, which consists of all premiums paid to date, and interest earned on the premiums.  The Specified Amount and the policy value determine the death benefit—the amount that is payable to the beneficiary when the insured passes away.

37.     The policy value is credited with monthly interest based on rates specified in the policy.  The policy value is invested in the company's general account investment portfolios, so the company bears the risk that investment performance will be unfavorable, just as the company stands to benefit if investment performance is favorable.

38.     Both the Specified Amount and the premiums are flexible.  Policyholders can adjust the amount and frequency of premium payments, and (for policyholders younger than 75) can raise or lower their Specified Amount.  Policyholders are allowed to make such adjustments so long as they do not result in: (1) a Specified Amount or premium lower than the minimums listed in the policy; or (2) payment of more than the maximum annual premium permitted under the policy terms.

39.     The class policies authorize Lincoln to take out a monthly deduction from their policy value. The monthly deduction is the sum of the COI; administrative charges; and rider charges. If the monthly deductions result in the policy value declining to $0, the policyholder is given a 60-day grace period to make a premium payment to raise the policy value above $0. If the policyholder fails to do so, the policy will lapse, meaning it will terminate without value.

40.     The COI is determined on a monthly basis and is the product of the COI rate and the number of thousands of net amount at risk for the month.

41.     The net amount at risk for a month is set by a fixed formula and equals the difference between the death benefit and policy value.

42.     By contrast, Lincoln sets the COI rate by applying certain criteria set forth in the policy. Lincoln is required to set COI rates using the following criteria:

- The COI must be determined on a monthly basis using certain COI rate factors stated in the policy;
- The COI rate must be "based on" Lincoln's "expectation of future mortality, interest, expenses and lapses";
- Any change in monthly COI rates must be "on a uniform basis for Insureds of the same rate class"; and
- The maximum rates must fall within actuarially determined "mortality tables" included in the policy.

43.     The class policies require that Lincoln set COI rates each month in good faith in accordance with the policy terms, and do not permit Lincoln to manipulate COI rates to make its policies more attractive than those offered by competitors, increase COI rates to recapture losses experienced in earlier policy periods, use its discretion in determining the timing and amount of

10

COI increases to induce policy lapses, or otherwise act inconsistently with its obligations as set out in the policies.

      **E.**     **Lincoln Improperly Raised Cost of Insurance Rates**

     44.     In June and July 2017, Lincoln began issuing form letters to policyholders and agents notifying them that the company would be raising COI rates on the class policies beginning in August 2017.  The increases in the COI rates are significant.

     45.     The notification letter Lincoln sent *to agents* attributed premium and COI increases to "[e]xpected lower investment earnings as a result of projected low interest rates and lower future account values"; "updated mortality assumptions that include instances of both higher and lower expected mortality versus prior expectations"; "updated expenses"; and "updated assumptions of future policyholder persistency/lapses."

     46.     The notification letters *to class members* did not specify in the same detail why COI rates were increasing.  Lincoln instead advised its insureds that "[COI] rates are based on certain cost factors, including mortality, interest, expenses and the length of time policies stay in force.  Our future expectations for these cost factors have changed; therefore, policy COI rates have been adjusted to appropriately reflect these future expectations."  Lincoln did not disclose to policyholders that one of the reasons it was increasing COI rates was "lower investment earnings."

     47.     In the FAQs sent to policyholders and the FAQs sent to advisors, Lincoln explained that the amount of the COI rate change "depends upon criteria listed in the policy."

     48.     Lincoln recognized that many policyholders would be unable to pay the increased COI and would, therefore, be forced to allow their policies to lapse—in its letter to

11

policyholders, Lincoln specified several options its insureds had "other than paying additional premiums":

- Paying the current premium and increasing the amount later to keep the policy in force;
- Paying the premium "for a potentially shorter coverage period and/or reduced policy cash value";
- "Reducing the specified amount of the policy";
- Exchanging the policy for a different one; or
- Surrendering the policy.

49.     The drastic premium increases dissuade policyholders from maintaining their policies.  Policyholders must choose between paying the higher premiums or allowing their policy to lapse once their account value has been depleted.  Lincoln's objective is to cause policyholders to allow their policies to lapse, thus relieving Lincoln of its obligations under the class policies—after having collected years' worth of policyholder premiums.  Lincoln further benefits by collecting greatly increased premiums from policyholders before they allow their policies lapse.

**F.      None of the Factors Disclosed in the Class Policies Justified the August 2017 COI Rate Increase**

50.     The factors on which Lincoln based its August 2017 increase do not support such dramatic rate hikes. The factors affecting COI rates for policyholders were relatively stable in 2016 and 2017, and none of the factors cited by Lincoln (investment losses, mortality, expenses, and updated persistency/lapse assumptions) justifies the drastic increase in the COI rate implemented by Lincoln in August 2017.

51.    The interest rates in 2016 and 2017 did not justify the drastic hikes.  Low interest

rates have persisted for years with the 10-year treasury rate dropping and remaining below 4%

since mid-2008.[2]  Although prolonged historically low interest rates have adversely impacted

Lincoln's business, Lincoln's disclosures to shareholders say it recognized the risks associated

with low interest rates and has been proactive in its investment strategies, product designs, rate

crediting strategies and overall asset-liability practices to mitigate the risk of unfavorable

consequences in a low interest rate environment.  New products have been sold with low

minimum crediting floors, and Lincoln applies disciplined asset-liability management standards,

such as locking spreads on its universal life products—including the class policies—at the time

of issue.

52.    Further, protracted low-interest rates and Lincoln's investment strategies suggest

that Lincoln's interest spreads have been relatively stable for the past decade.  In its 2015 and

2016 annual reports, Lincoln noted that it expected no significant changes in net flows into or out

of its fixed accounts or other changes that may cause interest rate spreads to differ from its

expectations, allowing it to "manage the effects of spreads on near-term income from

operations."

53.    Even if there were changes to the interest rate spreads, Lincoln admits in its 2015

and 2016 annual reports that factors such as an "adverse experience on investments . . . cannot be

passed on to customers," and as a result, spreads are reduced in periods of low profitability.

Lincoln assumes the risk of adverse investment results stemming from its investment decisions

and is prohibited from using COI rates to offset poor investment performance.

---

[2] While the 10-year treasury rate was at a low of 1.3% as of July 3, 2017, it has increased to
approximately 2.6% in December 2016 and presently remains over 2%.

13

54.    Consequently, the prolonged period of low interest rates that has occurred since 2008 does not justify the sudden and drastic increase in COI rates that Lincoln implemented in August 2017.

55.    Likewise, updated mortality assumptions do not justify the drastic rate hikes that Lincoln implemented in August 2017.  If anything, mortality assumptions at the time of the COI rate increase suggested that COI rates should go down.  Because mortality is the primary factor in determining COI rates, improved mortality should cause COI rates to drop.  In its disclosures to the National Association of Insurance Commissioners between 2010 and 2014, Lincoln affirmed that "mortality experience is also predicted to improve in the future."  And in its 2015 NAIC statement, Lincoln did not disclose any change to its mortality experience expectation.

56.    Moreover, in its 2016 annual report, Lincoln did not identify an increase in mortality or other expenses as a significant issue going into 2017.

57.    Finally, neither Lincoln's 2016 annual report nor its August 2017 quarterly report suggested that its expenses or assumptions as to policyholder persistency increased so drastically as to support the 2017 COI rate increases.

**G.    Lincoln Used Competitive Factors to Improperly Delay Its COI Increases**

58.    The class policies include a provision requiring Lincoln to determine the COI on a monthly basis, which should result in any change in the COI being gradual rather than sudden. Since the factors underlying the COI rates (expectation of future mortality, interest, expenses, and lapses) change in small increments over time, policyholders should not be faced with the financial shock of a drastic increase in COI rates from one month to the next.

59.    Had Lincoln gradually increased COI rates, policyholders could have shopped for more affordable policies from competing insurers or surrendered their policies before the

14

premiums became unsustainable. A gradual increase in COI rates would have also required Lincoln to revise its sales illustrations, further affecting its competitive position and adversely impacting sales.

60. The terms of the class policies do not allow Lincoln to base COI rates on a desire to induce policy lapses from existing policyholders or help Lincoln sell new policies. Additionally, the class policies required Lincoln to make a monthly determination of COI rate; not postpone determination of the new rate for several years. Lincoln therefore breached the class policies by postponing monthly determination of the COI rates for reasons independent of those contemplated by the policies.

### H.    The 2017 COI Rate Increase Was Based on Improper Factors

61. The class policies require Lincoln to base policyholders' COI rates on Lincoln's current "expectation of future mortality, interest, expenses and lapses." Lincoln is therefore prohibited from setting COI rates to make up for losses. Lincoln recognized such a limitation in its NAIC Annual Statement, noting that cost factors are based on "prospective assumptions" and are "periodically reviewed" so that "past losses (i.e., experience less favorable to the company than expected) are not recouped."

62. In a 2016 letter to policyholders announcing the repricing of a separate block of policies, Lincoln inadvertently acknowledged that the increases were the product of past investment experience, writing that the increase followed "nearly a decade of persistently low interest rates" and "recent historic lows." In its letter to agents announcing the 2017 repricing of the policies at issue here, Lincoln omitted any mention of the impact of interest rates in prior investment periods and framed the increase as the product of "lower investment earnings as a result of *projected* low interest rates," (italics added). But the conditions Lincoln credits for the

15

COI increase in 2017 existed for years before the 2017 increase. Lincoln is unable to explain its sudden realization in 2017 that interest rates were low and investment earnings would suffer as a consequence.

63.      If Lincoln had adjusted COI rates based on the appropriate factors on a monthly basis instead of postponing the COI rate increases for competitive purposes, rates would have been raised gradually. There have been no events affecting mortality, interest rates or expenses that would have justified such a sudden and drastic increase in COI charges in 2017.

**I.      Lincoln Improperly Raised COI Rates on a Non-Uniform Basis**

64.      The class policies require Lincoln to change the COI rates on a uniform basis for insureds of the same rate class. Stated differently, Lincoln is prohibited from picking among similarly situated policyholders in assessing COI rate increases.

65.      There are sound reasons for such a justification—were a life insurance company permitted to selectively raise COI rates on a non-uniform basis for insureds within the same rate class, the company could effectively conduct improper post-claims underwriting in order to increase the likelihood that policies it no longer deemed profitable would lapse.

66.      As explained in its 2017 letter to agents, however, Lincoln engaged in exactly the type of selective increases prohibited by the policies when it adjusted COI rates on only some of its universal life policies. And in 2016, Lincoln raised COI rates on a different block of policies—the Legend Series—which had been issued between 1999 and 2007. Other Lincoln policies remained unchanged. By raising COI rates on only some policies while keeping COI rates of other policies unchanged, Lincoln failed to change COI rates on a uniform basis for all insureds of the same rate class, and therefore violated the terms of the class policies.

16

67.     Lincoln's failure to change COI rates uniformly damaged Plaintiff and other policyholders that are subject to the 2017 increases. A COI rate increase implemented on a uniform basis for insureds of the same rate class allocates the increase on a proportionate basis across those insureds. By raising COI rates on only some insureds of the same rate class and not others, insureds like Plaintiff Tutor bear a disproportionate share of the increase. Had Lincoln changed COI rates on a uniform basis for insureds of the same rate class as required by the class policies, then the amount of the increase would have been lower because the costs would have been spread among more policyholders.

68.     Lincoln's reasons for adjusting COI rates based on policy series instead of rate class were financial and competitive: (1) sharply raising COI rates on some policy series deemed no longer profitable encourages lapses, which financially benefits Lincoln; and (2) raising COI rates on only some policies competitively benefits Lincoln with respect to new sales by allowing Lincoln (and thus agents selling its products) to illustrate more favorable future performance than it would if all policies experienced increased COI rates.

## CLASS ACTION ALLEGATIONS

69.     Plaintiff brings this lawsuit on behalf of himself and all others similarly situated, pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4), and seeks to represent a class defined as follows:

> All persons who own or owned a universal life insurance policy issued by
> Jefferson-Pilot Corporation, now Defendant Lincoln National Life Insurance
> Company, who were subjected to a cost of insurance rate increase beginning
> August 2017.

70.     Excluded from the class are Defendants, any entity in which the Defendants have controlling interest, any officers, directors, or employees of the Defendants, the legal representatives, heirs, successors, and assigns of the Defendants, anyone employed with

Plaintiff's counsel's firms, any Judge to whom this case is assigned, and his or her immediate family.

### A. Numerosity and Ascertainability

71.     The persons who fall within the class number in at least the hundreds, and most likely the thousands, and thus the numerosity standard is satisfied. Because class members are geographically dispersed across the country, joinder of all class members in a single action is impracticable.

72.     Class members are readily ascertainable from information and records in Lincoln's possession, custody, or control. Notice of this action can readily be provided to the class through direct mail.

### B. Typicality and Adequacy

73.     Plaintiff's claims are typical of the claims of the class. Plaintiff owns a class policy, his COI increased dramatically in connection with the 2017 repricing, and he has therefore suffered the same injury as the members of the proposed class in the form of increased COI rates in violation of policy terms.

74.     Plaintiff will fairly and adequately protect and represent the interests of the proposed class. Plaintiff's interests are aligned with, and not antagonistic to, those of the proposed class. Plaintiff is represented by counsel who are experienced and competent in the prosecution of class action litigation, and have particular expertise with class action litigation on behalf of universal life insureds.

### C. Predominance of Common Issues

75.     Questions of law or fact common to Plaintiff and the class include, without limitation:

18

(a) whether Lincoln failed to apply any change in COI rates on a uniform basis as
required under the policy terms for persons in the same rate class;

(b) whether Lincoln failed to determine COI on a monthly basis as required under the
policy terms;

(c) whether Lincoln failed to base COI rates on its current expectation of future
mortality, interest, expenses and lapses, as required under the policy terms;

(d) whether Lincoln delayed increases in COI for competitive reasons in breach of the
policy terms;

(e) whether Lincoln otherwise breached the policy contracts or violated applicable
actuarial standards of practice with respect to the computation and charging of
COI rates on the class policies;

(f) whether plaintiff and class members sustained damages as a result of Lincoln's
conduct, and if so, the amount of damages; and

(g) whether plaintiff and members of the class are entitled to injunctive relief to
prevent further breaches of the class policies by Lincoln and/or to restore policies
that have lapsed as a result of Lincoln's breaches.

76.    The questions set forth above predominate over any questions affecting only
individual persons, and a class action is superior to other available methods for the fair and
efficient adjudication of this controversy.

77.    Absent a class action, most class members would likely find the cost of litigating
their claims prohibitively high and would have no effective remedy. Because of the relatively
small size of the individual class members' claims, it is likely that few, if any, class members
could afford to seek redress for Defendants' violations.

19

78.     A class action is also superior to piecemeal litigation in that class treatment will conserve the resources of the courts and will promote consistency and efficiency of adjudication. Thus, the case is appropriate for class certification under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

79.     Classwide equitable and injunctive relief is appropriate under Rule 23(b)(1), (b)(2), and/or (c)(4) because:

> (a) the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Lincoln;
>
> (b) the prosecution of separate actions by individual class members would create a risk of adjudication of their rights that, as a practical matter, would be dispositive of the interests of other class members not parties to such adjudications or would substantially impair or impede other class members' ability to protect their interests; and
>
> (c) Lincoln has acted and refused to act on grounds that apply generally to the class such that final injunctive relief and/or declaratory relief is warranted with respect to the class as a whole.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### (Breach of Contract & Breach of the Contractual Covenant of Good Faith And Fair Dealing)

80.     Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

81.     Plaintiff and the class purchased universal life insurance policies—the class

policies—from Jefferson-Pilot, which ceased to exist following its merger with Lincoln in 2006.

After the merger, Lincoln assumed Jefferson-Pilot's contractual obligations relevant to the class

policies.

82.     The class policies are valid and enforceable contracts between Plaintiff and the

class members and Lincoln.

83.     The class policies implicitly contain covenants of good faith and fair dealing,

which prohibit Lincoln from exercising discretion afforded to it under the policies in such a way

as to frustrate Plaintiff and class members' reasonable expectations and deprive them of the

benefit of the agreement.

84.     Plaintiff and class members performed their duties under the class policies,

including paying premiums as required by the policies.

85.     By allowing unauthorized pricing considerations to enter into decision-making in

setting COI rates, by drastically increasing COI rates to induce policy lapses, and make up for

lost profits and/or investment losses, Lincoln materially breached the terms of the class policies

by failing to determine the COI rate on a monthly basis and failing to base the COI rates on

Lincoln's current expectation of future mortality, interest, expenses and lapses.

86.     By varying COI rate adjustments for policyholders of the same rate class, Lincoln

breached the terms of the class policies by failing to determine COI rates on a uniform basis for

insureds in the same rate class.

87.     In the August 2017 repricing, Lincoln also breached the duty of good faith and

fair dealing to the extent that it exercised discretion afforded to it under the class policies to: (1)

delay increases in COI for self-interested reasons; (2) improperly allow Lincoln's commercial

interests in ongoing policy sales and policyholder retention to dictate the timing and amount of COI rate increases; (3) manipulate the COI rate to induce policyholder lapses and make up for past losses; and (4) factor unauthorized and undisclosed charges into its COI rates.

88.     Because the COI rates are used to calculate the monthly deduction charges under the class policies, Lincoln has deducted and continues to deduct unauthorized monthly deduction charges from the policy values of Plaintiff and the class.

89.     As a direct and proximate result of Lincoln's material breaches, Plaintiff and the class suffered damages, and these damages are continuing in nature.

90.     Unless Lincoln is preliminarily and permanently enjoined from continuing to assess unlawfully increased monthly deduction charges, Plaintiff and the class will continue to sustain severe and irreparable injury, for which they have no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
## Violations of North Carolina Deceptive and Unfair Trade Practices Act, N.C. GEN. STAT. § 75-1, *et seq*. ("NCUDTPA")

91.     Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

92.     Plaintiff Tutor is a citizen and resident of the state of North Carolina.

93.     Prior to the Lincoln merger, Jefferson-Pilot maintained its principal offices in North Carolina.

94.     The NCUDTPA prohibits a person from engaging in "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" The NCUDTPA provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the NCUDTPA. N.C. GEN. STAT. § 75-16.

22

95.     Defendants' acts and practices complained of herein were performed in the course of Defendants' trade or business and thus occurred in or affected "commerce," as defined in N.C. GEN. STAT. § 75-1.1(b).

96.     Defendants' acts and practices are unfair and deceptive in that Lincoln knowingly assessed wrongful COI rate increases in violation of the terms of the class policies and falsely represented to Plaintiff and the class that the increases were justified by the factors enumerated in the policies, when in fact the COI increases were designed to (1) recover past losses; and (2) force policyholders into allowing their policies to lapse.

97.     Defendants' acts and practices are contrary to North Carolina law and policy and constitute immoral, unethical, oppressive, and unscrupulous business practices that caused substantial injury to Plaintiff and class members.  The gravity of the harm resulting from Defendants' unfair conduct outweighs any potential utility.  The practice of knowingly assessing unauthorized charges to policyholders in order to cause them to reduce their death benefit, policy term, or to increase the lapse rate harms the public at large and is part of a common and uniform course of wrongful conduct.  There are reasonably available alternatives that would further Defendants' business interests.  The harm from Defendants' unfair conduct was not reasonably avoidable by consumers.

98.     Defendants' conduct proximately caused injuries to Plaintiff and the class.

99.     Plaintiff and the class were injured as a result of Defendants' conduct in that they have been and will continue to be assessed the wrongfully increased COI rates, resulting in rapid reduction of the policy value, payment of increased premiums, or both.  These injuries are the direct and natural consequence of Defendants' violations alleged herein.

23

100.    Plaintiff, individually and on behalf of the class, seeks treble damages pursuant to N.C. GEN. STAT. § 75-16, and an award of reasonable attorneys' fees pursuant to N.C. GEN. STAT. § 75-16.1.

## THIRD CLAIM FOR RELIEF
### Injunctive Relief as to COI Increases

101.    Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

102.    Defendants engaged in and/or continue to engage in the following practices, without limitation:  (1) assessing the August 2017 COI rate increase though the increase was not justified under the terms of the class policies; (2) failing to disclose, after sale of the policies, the forthcoming dramatic increase that took effect in August 2017; (3) falsely representing to Plaintiff, the class, and agents, that the COI rate increases were justified.

103.    Plaintiff respectfully requests that the Court enjoin Defendants from continuing their wrongful conduct, prohibiting them from applying the wrongful 2017 COI rate increases to the class policies, and ordering that any policy that was surrendered or terminated as a result of the COI increases be reinstated.  Plaintiff further requests that this Court order restitution be paid by Defendants to the class for the wrongfully increased COI rates.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests relief and judgment against Defendants as follows:

(a)    That the Court enter an order certifying the class, appointing Plaintiff as representative of the class, appointing Plaintiff's counsel as class counsel; and directing that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the class;

(b)     For a judgment against Defendants for the cause of action alleged against them;

(c)     For compensatory damages in an amount to be proven at trial;

(d)     For a declaration of the parties' respective rights and duties under the class policies—specifically a declaration of the following:

- By artificially keeping COI rates low to retain and attract insurers, Lincoln failed to determine COI rates on a monthly basis.

- By using unauthorized and undisclosed factors to compute the COI rates under the class policies, Lincoln impermissibly increased COI rates for class policies.

- By increasing COI rates for some policyholders while keeping other policyholders rates the same, Lincoln impermissibly changed COI rates on a non-uniform basis.

- By varying COI rates adjustments for policyholders of the same rate class, Lincoln impermissibly changed COI rates on a non-uniform basis.

- By inflating COI rates under the class policies with competitive factors and basing those rates on prior lost profits, Lincoln impermissibly deducted unauthorized charges from the policy values of Plaintiff.

(e)     For a declaration that Defendants' conduct as alleged herein is unlawful and in material breach of the class policies;

(f)     For appropriate injunctive relief, enjoining Defendants from continuing to engage in conduct in breach of the class policies, and from continuing to collect unlawfully inflated charges in violation of the class policies, and order

25

any policy to be reinstated that lapsed as a result of the improper COI increases;

(g)     For reasonable attorneys' fees as permitted by law;

(h)     For pre-judgment and post-judgment interest at the maximum rate permitted by law;

(i)     For Plaintiff's costs incurred; and

(j)     For such other and further relief in law or equity as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff, on his own behalf and on behalf of the proposed class, demands a trial by jury on all issues so triable.

DATED: September 18, 2017                    Respectfully submitted,

**MCCUNE WRIGHT AREVALO, LLP**

By: */s/ Joseph G. Sauder*
Joseph G. Sauder (State Bar Number 82467)
555 Lancaster Avenue
Berwyn, PA 19312
Tel: (610) 200-0580
Email: jgs@mccunewright.com

**GIRARD GIBBS LLP**
Daniel C. Girard (*pro hac vice forthcoming*)
Adam E. Polk (*pro hac vice forthcoming*)
Angelica M. Ornelas (*pro hac vice forthcoming*)
Paige B. Pulley (*pro hac vice forthcoming*)
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
Email: dcg@girardgibbs.com
Email: aep@girardgibbs.com

26

Email: amo@girardgibbs.com
Email: pbp@girardgibbs.com

**PHILIP W. THOMAS LAW FIRM**
Philip W. Thomas (*pro hac vice forthcoming*)
226 North President St., Ste. B
Jackson, Mississippi 39201
Telephone: (601) 714-5660
Email: pthomas@thomasattorney.com

*Counsel for Plaintiff Marshall Lewis Tutor*