## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: LINCOLN NATIONAL COI LITIGATION | Case No.: 2:16-cv-6605 |
| IN RE: LINCOLN NATIONAL 2017 COI RATE LITIGATION | Case No.: 2:17-cv-04150 |

**Pappert, J.**                                              **December 4, 2023**

## MEMORANDUM

After more than six years of litigation over whether Lincoln National Corporation and Lincoln National Life Insurance Company breached their contracts with certain life-insurance policy owners, the parties agreed to settle these two class actions. In June 2023, the Court preliminarily approved the settlement class and the settlement between Lincoln and the class plaintiffs. Apollo Global Management is the beneficial owner of fifty-two policies in the class, with Apollo's securities intermediaries the policies' record owners.

The day before the hearing for final approval of the class action settlement, and six weeks after the opt-out deadline, Apollo and its securities intermediaries (collectively "movants") filed motions for extension of time to opt out from the class. The Court granted them additional time to investigate the reasons for not timely opting

1

out, and to file a renewed motion for extension of time to do so.  After considering movants' initial and renewed motions, all accompanying filings and responses by plaintiffs and Lincoln, the Court denies the motions.  Ruling otherwise on these facts would render class action settlement opt-out deadlines meaningless.

I

A

On June 14, 2023, the Court preliminarily certified the settlement class, and preliminarily approved the settlement and the form and procedures for notice of the settlement to class members.  *See* (ECF 249 in Case 2:16-cv-6605, ECF 123 in Case 2:17-cv-04150).

Apollo, a private equity firm managing over $600 billion in assets, including life settlement portfolios, is the beneficial owner of fifty-two policies in the settlement class. *See* (Rule 7.1 Statement p. 2, ECF 269 in Case 2:16-cv-6605, ECF 143 in Case 2:17-cv-04150; Declaration of Samantha A. Lovin, dated Oct. 27, 2023 ("Lovin Decl.") Ex. 1 at 4, ECFs 275-1 and 275-2 in Case 2:16-cv-6605, ECFs 149-1 and 149-2 in Case 2:17-cv-04150).  Apollo's securities intermediaries—U.S. Bank, Wells Fargo, Wilmington Savings Fund Society and Wilmington Trust—act on behalf of Apollo and, in addition to the fifty-two policies at issue here, also serve as intermediaries for 375 other policyholders.  (Declaration of Kimberly K. Ness, dated Oct. 27, 2023 ("Oct. 27 Ness Decl."), ¶¶ 5-6, ECF 274-1 in Case 2:16-cv-6605, ECF 148-1 in Case 2:17-cv-04150).

B

Lincoln provided the settlement administrator retained by class plaintiffs, JND Legal Administration LLC, with a list of the owners and addresses of all 51,340

policies, including the Apollo policies.  *See* (Declaration of Kimberly K. Ness Regarding Settlement Administration ("Ness Final Approval Decl.") ¶¶ 3-4, ECF 256-3 in Case 2:16-cv-6605, ECF 130-3 in Case 2:17-cv-04150).  On July 5, 2023, the settlement administrator mailed the class notice via U.S Postal Service regular mail to those 51,340 class members.  (Oct. 27 Ness Decl. ¶ 4).  A total of 426 class notices were mailed to the securities intermediaries, none of which were returned to the settlement administrator as undeliverable. (*Id.* at ¶¶ 6-7).

In addition to sending notices to all members of the settlement class, the settlement administrator created a website publicizing information related to the settlement, https://www.2016and2017coisettlement.com.  (Ness Final Approval Decl. ¶¶ 7-8).  The website contains the notice and other court filings, including the Settlement Agreement.  (*Id.*).  The preliminarily approved settlement was also reported in the media, including in the April 3, 2023 issue of *The Deal*, a news source for the life settlement industry.  (Lovin Decl. Exs. 3-4, ECFs 275-1, 275-4, 275-5 in Case 2:16-cv-6605, ECFs 149-1, 149-4, 149-5 in Case 2:17-cv-04150).

The notice stated class members could opt out by submitting a request to the settlement administrator postmarked by August 21, 2023 or commencing a lawsuit against Lincoln asserting claims that would have been resolved by the settlement, serving a copy of the pleading on Lincoln on or before August 21, 2023.  *See* (Class Notice, ECF No. 247-2 in Case 2:16-cv-6605, ECF 121-2 in Case 2:17-cv-04150).

C

On or about September 27, 2023, Apollo purportedly discovered that it and the securities intermediaries failed to remove Apollo's policies from the settlement class

prior to the August 21 deadline.  (Declaration of Christopher Powers dated Oct. 12, 2023, ("Oct. 12 Powers Decl."), ¶ 15, ECF 266-4 in Case 2:16-cv-6605, ECF 132-4 in Case 17-cv-04150).  On September 30, four days before the fairness hearing, movants' counsel notified Lincoln and class plaintiffs' lawyers of their intention to move for an extension of time to opt out of the settlement.  *See* (October 2 Letter, ECF 257 in Case 2:16-cv-6605, ECF 131 in Case 17-cv-04150).  They informed the Court of their plans on October 2.  (*Id*.).  Movants filed their initial motions for extension of time to opt out on October 3.  *See* (Movants' Initial Brief, ECF 258-1 in Case 2:16-cv-6605, ECF 132-1 in Case 17-cv-04150).

At the October 4 hearing, counsel could not explain their clients' failure to timely opt out from the settlement class.  *See* (Oct. 4, 2023 Hr'g Tr. at 20:9-19, ECF 275-9 in Case 2:16-cv-6605, ECF 149-9 in Case 17-cv-04150).  The Court granted movants additional time to complete their internal investigation and ordered them to file a renewed motion on or before October 13.  *See* (ECF 260 in Case 2:16-cv-6605, ECF 134 in Case 17-cv-04150).  The Court subsequently approved the settlement and certified the class.  (ECF 261 in Case 2:16-cv-6605, ECF 135 in Case 17-cv-04150).

Movants filed their renewed motions, which included details of Apollo's internal investigation.  (ECF 266 in Case 2:16-cv-6605, ECF 140 in Case 17-cv-04150).  The investigation confirmed Apollo's receipt of notices for three policies from securities intermediary Wilmington Trust twenty days before the opt-out deadline, but concluded "to the best [of Apollo's] knowledge" it did not receive notices for the other forty-nine. (Movants' Initial Brief pp. 2, 8-9; Movants' Renewed Brief, pp. 12, 16, ECF 266-1 in Case 2:16-cv-6605, ECF 140-1 in Case 17-cv-04150; Oct. 12 Powers Decl. ¶¶ 13, 17).

4

II

Under Federal Rule of Civil Procedure 6(b), "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."

Four factors are considered in evaluating whether a party's failure to timely opt out was due to excusable neglect: "1) the danger of prejudice to the nonmovant; 2) the length of the delay and its potential effect on judicial proceedings; 3) the reason for the delay, including whether it was within the reasonable control of the movant; and 4) whether the movant acted in good faith." *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 322-23 (3d Cir. 2001) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship et al.*, 507 U.S. 380, 395 (1993)).  In determining "whether a party's neglect of a deadline is excusable ... the determination is at the bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395.

III

A

Movants concede the reason for delay factor does not weigh in their favor, but urge the Court to minimize this and find excusable neglect, since Apollo only received notices for three policies and "this is not a case where, for instance, a movant received [fifty-two] separate notices and disregarded all of them."  (Movants' Renewed Brief, p. 5).  The Court sees little value in this distinction, or movants' other attempts to downplay their failure to opt out.  They provide no reason for this failure with respect to the notices they admit receiving for three of the policies.  And even if movants did not

receive any notice pertaining to the forty-nine other policies, that does not excuse the decision to take no action in response to the notices they did receive.

Furthermore, the securities intermediaries never say they didn't receive any notices, or that they didn't forward any notice they did receive to Apollo.  And when an intermediary is responsible for liaising between a settlement administrator and certain settlement class members, the failure of that liaison to provide timely notice is unconvincing evidence of excusable neglect.  *See, e.g., Georgine*, 1995 WL 251402, at *6, 9 (rejecting the argument that movants' delay in timely opting out should be excused because their unions—who received notice of the settlement but delayed notifying movants until they could "analyze the notice materials, take a policy position, consult counsel and disseminate any materials to their members"—did not provide notice of settlement until nearly the end of the opt-out deadline).

B

Movants contend the risk of prejudice to the parties of extending the opt-out deadline is minimal because the plaintiffs, class members and Lincoln would be in the same position if the movants opted-out by the August 21 deadline for three reasons: (1) the exclusion of Apollo's fifty-two policies would not hit the threshold at which Lincoln would have the right to terminate the Settlement Agreement,  (Movants' Renewed Brief, p. 7), (2)  Lincoln would face the same number of opt-out lawsuits as if the movants had opted out by August 21 (*Id.* at 8.), and (3) a concern of "copycat" opt-out requests is unwarranted since no other class members have moved for an extension of time to opt out. (*Id.*),

None of these arguments move the needle.  Giving movants a do-over on these facts would prejudice the parties and vitiate the "excusable neglect" standard altogether.  Deadlines for opting-out allow the settling parties certainty as to the size of the settlement amount and class, while letting them know which, if any, claims remain to be litigated.  Allowing parties to opt out, well after the deadline for doing so and for no articulable reason, would erode that certainty and pave the way for those who may second guess a settlement to opt out of it for any or no reason.  *See In re Dvi*, 2016 WL 1182062 at *8 ("The opt-out deadline . . . was a negotiated, express term of the Stipulations by which Defendants sought to achieve finality and thereby financial certainty.  Allowing the [movants] to belatedly opt out now would increase Defendants' potential financial obligations" and "might discourage settlements in future complex . . . [cases]."); *See also In re NFL Players' Concussion Injury Litig.*, 2019 WL 95917, at *7 (E.D. Pa. Jan. 3 2019) ("allowing a class member whose request is 'neither unique nor compelling' to opt out after the deadline may prejudice defendants by opening the door to other requests for untimely opt-outs.").

## C

The length of the delay and its potential effect on judicial proceedings also militates against finding excusable neglect. Movants argue their delay in seeking to opt out was shorter than in other cases where the Third Circuit has granted extensions on "excusable neglect grounds."  (Movants' Renewed Brief, p. 8).

But the relevant question is the delay's effect on judicial proceedings.  *See In re Orthopedic Bone Screw Prod. Liab. Litig.*, 246 F. 3d 315, 325 (3d Cir. 2001) (describing the "relevant inquiry" as "how [movant's] failure to comply with [the] deadline will

deter the expedient and just resolution of claims"); *In re Imprelis Herbicide Mktg., Sales Pracs. & Prod. Liab. Litig.*, 2014 WL 348593, at *5 (E.D. Pa. Jan. 31, 2014) (considering whether the length of delay will have a "tangible effect on the proceedings in this matter, aside from necessitating this motion practice.").

Granting this late opt-out request will leave open questions of who will be bound by the Settlement Agreement, and if and when these cases will be finally resolved. "The purposes of Rule 23 are to provide due process and to achieve *finality* in class litigation." *Georgine v. Amchem Prods., Inc.*, 1995 WL 251402 at *6 (emphasis in original). "These interests require that at some point a cutoff date be set for filing requests for exclusion. This Court sees no more appropriate time to draw a 'white line' than the opt-out deadline itself." *Id.* (collecting cases). And granting this late opt-out in particular—where sophisticated movants admit they received but overlooked at least three notices and have no explanation for what happened to notices for the other forty-nine policies—means the Court would have little to no grounds for denying future opt-outs, further extending litigation that took over six years to resolve.

D

Finally, movants contend they acted in good faith because their failure to opt out by the deadline was an honest oversight and they have since "acted with all possible speed" to, among other things, investigate the cause of the failure, retain counsel and notify the parties and Court in advance of the fairness hearing, and take steps to cure their mistake while "minimizing any potential prejudice to either the Class, Defendants, or their respective counsel." (Movants' Renewed Brief, p. 11).

The Court appreciates the lawyers' diligence, but this does not equate to good faith on their clients' part. Again, Apollo acknowledges it received class notices for

8

three policies from the securities intermediary Wilmington Trust, and these notices were "overlooked" for more than eight weeks, and six weeks after the opt-out deadline. (Movants' Renewed Brief, p. 16; Oct. 12 Powers Decl. ¶ 14). Movants have no explanation or justification for their decision not to opt out by the deadline as to those three policies. That can't constitute "good faith," no matter how defined.

And movants' contention that Apollo "never received" notices for the other forty-nine policies is the class action settlement equivalent of their dog eating the homework. Apollo's internal investigation consisted of running a keyword search through the emails of three custodians for a period of July 5, 2023 through August 21, 2023, (Oct. 12 Powers Decl.¶ 17), and searching the emails of the custodians for emails from the securities intermediaries' domain names. (*Id.* at ¶ 20). Based on this investigation of three custodians, Apollo concluded that it had "not received any other notice of the Settlement." (*Id.* at ¶ 16). Meanwhile, the settlement administrator says 426 notices were sent to the addresses of the four securities intermediaries (including for the fifty-two policies at issue here) and none were returned as undeliverable. (Oct. 27 Ness Decl. ¶¶ 5-7.).

Apollo acknowledges it has sought exclusion from cost-of-insurance class action settlements on numerous occasions since 2018. (Movants' Renewed Brief, p. 9). Apollo's claim it didn't know about the deadline for all policies rings hollow given its sophistication and involvement in similar litigation, the receipt of opt-out deadline notices for some of the policies and no evidence that the securities intermediaries did not know about the other ones. Movants do not present a compelling showing of good

faith, let alone one that outweighs the other three factors cutting against finding excusable neglect.

An appropriate Order follows.


BY THE COURT:


*/s/ Gerald J. Pappert*

GERALD J. PAPPERT, J.